[No. 46-40413-3. Division Three. April 7, 1970.]

WILFRED HUBERDEAU, *Respondent*, v. ANDREW DESMARAIS *et al., Appellants.*

*Halverson, Applegate & McDonald* and *Alan A. McDonald*, for appellants.

*Hovis, Cockrill & Roy* and *Ted Roy*, for respondent.

**REVIEW GRANTED BY SUPREME COURT**

GREEN, J.—Plaintiff, Wilfred Huberdeau, brought an ac-

tion for specific performance against defendants, Andrew Desmarais and his wife Jeanne, to compel their surrender and transfer of a hop allotment base certificate. Following trial, the court entered judgment for plaintiff and ordered the transfer. Defendants appeal.

Since no error is assigned to the trial court's findings of fact, they will be accepted as verities. CAROA 43. *York v. Cooper*, 60 Wn.2d 283, 373 P.2d 493 (1962); *Union Bank v. Kruger*, 1 Wn. App. 622, 463 P.2d 273 (1969). The material findings are as follows:

**2.**

On February 6, 1962, Wilfred L. Huberdeau and his wife, Nadine L. Huberdeau, as vendors, executed a conditional sales contract conveying 80 acres of hops in the Harrah area to Andrew W. Desmarais and Jeanne Desmarais, his wife. The total purchase price was $160,000.00, with $40,000.00 cash down payment and interest on the balance at six per cent per annum.

By the express terms of the contract, the vendees were required to make the first annual payment of $5,000.00 plus six per cent interest on the unpaid balance of the purchase price on January 5, 1963, and each year thereafter on January 5th. The contract also contains the following conditions relating to payments on principal:

1. The payments to be applied first to interest and the balance to principal.

2. In the event the purchasers' total crop is reduced in any one year below half the normal year due to an act of God, the seller agrees that the purchaser shall not be obligated to make the yearly principal payment for said year; provided, however, that the purchaser shall pay the current interest payment, and provided, further, that the principal balance shall not be reduced and that the period of the contract shall be extended accordingly. This provision shall not be operative more than for three years during the period of this contract. Normal yields as herein used shall mean eight bales of hops.

In addition, the contract contains printed provisions declaring time to be of the essence and the vendors' right to forfeit vendees' interest in the event ". . . purchaser fails to make any payment or perform any condition of the contract . . ."

### 3.

In 1965, the hop growing industry came under regulation by a federal marketing order. The Desmarais', as growers, were allocated a hop allotment base.

### 4.

Vendees made the following payments in accordance with the terms and conditions of the February 6, 1962 real estate contract:

| Date Paid | Interest | Principal |
|-----------|----------|-----------|
| 1-12-62 | | $ 2,000.00 |
| 2-15-62 | | 38,000.00 |
| 1-2-63 | $ 6,300.00 | |
| 1-2-63 | | 5,000.00 |
| 1-3-64 | 6,900.00 | |
| 1-3-64 | | 5,000.00 |
| 1-5-65 | 6,600.00 | |
| 1-4-66 | 6,600.00 | |
| 1-5-67 | 6,600.00 | |
| | $33,000.00 | $50,000.00 |

In accordance with the terms of the 1962 sales contract, the vendees also paid over $5,000.00 of taxes on the property from 1962 up to and including the first one-half of the 1967 realty taxes.

Although the vendees' crop yield from the 80 acres in 1964, 1965 and 1966 was in excess of four bales per acre, the vendees were financially unable, in 1965, 1966 and 1967, to pay the annual interest ($6,600.00) as well .as the principal ($5,000.00) payments. After consultation with the vendees in 1965 and 1966, the vendor expressed his agreement and satisfaction with receipt of interest on the balance of the purchase price.

*The vendees advised Huberdeau after the hop harvest in the late fall of 1966 that they would again, as in the previous two years, be unable to pay both interest and principal in 1967. It is undisputed that at that time, Huberdeau indicated his intention not to require principal payment in 1967. This was clearly the vendees' understanding when they withdrew money from their cash savings reserve to make the 1967 interest payment on January 5, 1967. Vendor-Huberdeau neither made a demand for payment of the 1965, 1966 or 1967 principal payments, nor gave a notice of his intention to forfeit the*

*vendees' interest in the 80 acres until on or about January 16, 1968.*

## 5.

On or about January 10, 1967, a second document (introduced herein as Exhibit 5) was prepared by vendor. It contained the following recitals:

1. *Seller agrees to waive the timely payments of the 1967 installment* under the terms of that certain real estate contract referred to  .  .  .  (i.e., introduced herein as Ex. 1).

2. Purchaser agrees that the allotment base granted to him pursuant to the hop marketing order of 1965 shall be part of the land included in said contract (i.e. Ex. 1), and that in the event seller elects to declare a forfeiture of purchasers' rights under said contract because of a breach thereof by purchaser, purchaser agrees to take all steps and to perform all acts necessary to effect a transfer of said allotment base to seller.

The January 14, 1967 document was neither signed by Mrs. Desmarais nor was it acknowledged by a notary public.

(Italics ours.)

Based upon these findings, the trial court entered conclusions of law and judgment for plaintiff.

First, defendants claim the trial court erred in entering the following conclusions of law:

2.(b)   That although waived prior to January 14, 1967, the vendor could have reinstated the February 6, 1962 forfeiture clause in 1967 by giving the vendees adequate notice of the vendor's intention to reinstate the clause plus a reasonable time for the vendees to fully perform. (c)   That the vendor's consideration recited in the January 14, 1967 document:

"Seller agrees to waive the timely payment of the 1967 installment  .  .  ."

is ambiguous and does not express the vendor's intention on January 14, 1967 to also waive until January 5, 1968 his right to reinstate the forfeiture clause provided in the parties' February 6, 1962 contract.

.  .  .

(e)  That there was sufficient recited and unrecited con-

sideration and that the January 14, 1967 document is a legally valid and enforceable contract.

Defendants take the position that plaintiff waived the 1967 principal payment in the fall of 1966 when he indicated his intention not to require the 1967 principal payment if the defendants would pay the interest as they had done in 1965 and 1966. Defendants further contend the January 14, 1967 document is not ambiguous and that by its terms the seller agreed to do no more than was agreed in the fall of 1966. Therefore, defendants conclude plaintiff gave up nothing thus rendering the January 14, 1967 agreement without consideration and unenforceable. We agree.

The trial court's findings state:

it is undisputed that at that time [in the fall of 1966], Huberdeau indicated his intention not to require principal payment in 1967. This was clearly the vendees' understanding when they withdrew money from their cash savings reserve to make the 1967 interest payment on January 5, 1967.

It seems clear the court found an oral waiver of the 1967 principal payment in the fall of 1966. Plaintiff, however, argues that since payment of interest was less than the total amount due, the oral agreement operated only as a temporary waiver of the provisions of the 1962 contract making time of the essence; and, thereafter plaintiff could declare a forfeiture for nonpayment of principal by giving notice of his intention to do so, allowing a reasonable time thereafter for the defendants to perform. There is no quarrel with this statement of the general rule, *Moeller v. Good Hope Farms, Inc.*, 35 Wn.2d 777, 215 P.2d 425 (1950); but, it doesn't help plaintiff in this case because the court also found:

vendees-Huberdeau neither made a demand for payment of the 1965, 1966 or 1967 principal payments, *nor gave a notice of his intention to forfeit the vendees' interest* in the 80 acres *until on or about January 16, 1968.*

(Italics ours.) Since plaintiff did not give notice of inten-

tion to forfeit until after the January 14, 1967 document was signed, the rule of the *Moeller* case does not apply. At the time the parties signed the January 14, 1967 document, their status had not changed from what it was following the oral agreement in the fall of 1966. The mere fact that plaintiff could have given notice of intention to forfeit is not sufficient consideration for the agreement.

Since there is no finding plaintiff gave notice of an intention to reinstate the forfeiture provision or that a dispute existed between the parties, the vendee-wife's unilateral feeling that forfeiture would result, standing alone, is not sufficient to constitute consideration. Therefore, the court's conclusion of law stating

> the vendee-wife felt forfeiture would result if the January 14, 1967 document were not signed even though she did not want it to be signed and refused to sign it.

cannot support a judgment for plaintiff.

The trial court concluded the provision "seller agrees to waive the timely payment of the 1967 installment" is ambiguous. Parol evidence was considered by the court. It was such evidence that led the court to the conclusion the above provision was ambiguous. The court concluded the provisions did not express the defendants' true intention to also waive until January 5, 1968 his right to reinstate the forfeiture clause. These conclusions were erroneous.

█ █ In construing a written document, the primary purpose is to ascertain the parties' intentions. Where their intentions are clear from the writing itself, there is nothing to construe and courts should not under the guise of interpretation rewrite or create contracts that the parties did not make themselves. Neither should a court find or read an ambiguity into a contract where it can be reasonably avoided by reading the contract as a whole. Parol evidence is never admissible to create an ambiguity; it is only admissible to explain or remove an ambiguity apparent on the face of the document. *Grant County Constructors v. E. V. Lane Corp.*, 77 Wn.2d 110, 459 P.2d 947 (1969).

The words used in the January 14, 1967 document have a plain meaning. The trial court in construing the contract in effect used parol evidence to find an ambiguity where none otherwise existed. This was improper. For the trial court to have concluded the words used in the January 14, 1967 document were intended to also mean a waiver of the right to reinstate the forfeiture clause until January 5, 1968 is to read an ambiguity into the contract where none existed.

It seems clear that when plaintiff waived the 1967 principal payment in the fall of 1966 on payment of interest only, he overlooked securing an agreement from the defendants with respect to the hop allotment certificate. Plaintiff accepted the interest payment on January 5, 1967. The January 14, 1967 document required plaintiff to do no more than he had already done; hence, there was no consideration for the January 14, 1967 document. The trial judge was correct in his first oral opinion; he committed error when he reversed that decision.

Judgment reversed.

EVANS, C. J., and MUNSON, J., concur.

Petition for rehearing denied May 18, 1970.