[No. 9532–3–I.   Division One.   May 3, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL
D. CALLAHAN, *Appellant.*

*Stephanie Searing,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Timothy X. Sullivan, Deputy,* for respondent.

WILLIAMS, J.—Michael Dean Callahan was accused of illegal possession of cocaine. In a trial to the court, upon stipulated evidence, he was found guilty as charged. He appeals, claiming the court should have suppressed certain evidence. We affirm.

The facts are as follows: On June 9, 1980, at about 3 a.m., a police officer saw a car pull into the parking lot of a convenience store. The driver and Callahan waited in the car until there was no one other than the clerk in the store, then went in, apparently making a purchase. Upon returning to the car, they drove to a darkened area of the lot where they parked, remaining inside with the interior dome light on.

The officer, believing the activity suspicious, walked to the car and saw a white powdery substance, identified as cocaine, on a piece of paper typically used for packaging that substance on Callahan's lap. When the officer asked for the paper, Callahan slipped it between the front seat and console. The officer then ordered Callahan and the driver out of the car, into the back of his patrol car, called for a backup unit, and went into the store to inquire about

what had happened there. The clerk said that Callahan had attempted to sell him cocaine.

Upon returning to the car, the officer searched it finding not only the cocaine Callahan had had on his lap but several packets of that substance in the unlocked glove compartment.

■ Callahan raises three issues concerning the trial court's refusal to suppress the cocaine. He first argues, relying on *State v. Daugherty,* 94 Wn.2d 263, 267, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981) that the "plain view" doctrine cannot justify the officer's looking at the cocaine on Callahan's lap, resulting in the search of the car, because the officer's observation was not "inadvertent." *See Daugherty,* at 267. Whether the officer seeing the cocaine on Callahan's lap is analyzed under the "open view doctrine", or the "visually similar, but legally distinct, 'plain view doctrine'", *State v. Seagull,* 95 Wn.2d 898, 901, 632 P.2d 44 (1981),[1] Callahan's interpretation of *Daugherty* is incorrect. The requirement in *Daugherty* that the discovery of contraband be "inadvertent" does not mean that the officer must act with a completely neutral and benign attitude when investigating suspicious activity. Such a rule would contradict the first requirement in *Daugherty* that the officer have a *prior justification* for the intrusion, *id.* at 267, when conducting an investigation of apparently clandestine activity that discloses evidence in "plain view." Because such investigations necessarily demand an inquiring and cautious disposition on the part of the officer involved, the term "inadvertent," in the context of the plain view doctrine, simply means that the officer discovered the evidence while in a position that does not infringe upon any reasonable expectation of privacy, and did not take any further unreasonable steps to find the evidence

---

[1] It is questionable as to whether it is necessary to make any distinction at all between the "plain view" and "open view" doctrines, the crucial factor for Fourth Amendment purposes being whether the officer impermissibly intruded on a reasonable expectation of privacy. *See Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

from that position. *See State v. Seagull,* 95 Wn.2d at 902–03.

When he approached the car and saw the cocaine Callahan was holding, the officer was lawfully present on a parking lot open to the public, and was standing where any citizen could legally be. *See State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243, *cert. denied,* 423 U.S. 891 (1975). There was no intrusion on Callahan's reasonable expectation of privacy; the trial court correctly refused to suppress the cocaine on that ground.

Callahan next argues that the search of the car's interior, while he and the driver were under custodial arrest, was illegal because not made with a search warrant. The "automobile exception" to the warrant requirement has been the subject of controversy in the courts and among commentators. *See generally Robbins v. California,* 453 U.S. 420, 69 L. Ed. 2d 744, 101 S. Ct. 2841 (1981); *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981); *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979); *State v. Keyser,* 29 Wn. App. 120, 627 P.2d 978 (1981); Recent Developments, *Criminal Procedure— Luggage Found During a Lawful Warrantless Search of an Automobile May Not Be Searched Without a Warrant— Arkansas v. Sanders, 442 U.S. 753 (1979),* 55 Wash. L. Rev. 871 (1980).

Recently, this court decided in *State v. Keyser,* 29 Wn. App. 120 that the warrantless search of a plastic garbage sack found under the seat of a vehicle was impermissible because there was no probable cause to search the interior of the vehicle. *Id.* at 127–28. That case is distinguishable because there probable cause to search did not exist. In this case, the officer knew that there was a small quantity of cocaine between the front seat and console, and he also had information from the store clerk that Callahan was attempting to sell it, thus establishing probable cause that a larger quantity of contraband might be found somewhere in the car. *State v. Shoemaker,* 28 Wn. App. 787, 792, 626 P.2d 538 (1981).

■ Finally, Callahan contends that the search of the glove compartment was illegal because it exceeded the permissible scope of the interior search. This question was recently decided by the United States Supreme Court in *New York v. Belton* wherein it was stated:

> *[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.*
>
> *It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment,* for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.[4]

> [4]"Container" here denotes any object capable of holding another object. It thus includes *closed or open glove compartments,* consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk.

(Citations and some footnotes omitted. Italics ours.) *New York v. Belton,* 453 U.S. at 460–61, 69 L. Ed. 2d at 775.

■ The Washington State Constitution does not provide any greater protection in this situation than the Fourth Amendment. Rather, insofar as the scope of automobile interior searches are concerned, article 1, section 7 of the Washington State Constitution is coextensive with the Fourth Amendment providing no greater or no less protection. As was said in *State v. Smith,* 88 Wn.2d 127, 559 P.2d 970, *cert. denied,* 434 U.S. 876 (1977):

> It is apparent that the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution are comparable and are to be given comparable constitutional interpretation and effect.

*Id.* at 133. *Cf. State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980) (Const. art. 1, § 7 confers "automatic" standing, in contrast to Fourth Amendment).

The trial court correctly refused to suppress the cocaine seized in the car incident to Callahan's arrest.

The judgment is affirmed.

ANDERSEN, C.J., and CALLOW, J., concur.