[No. 5640-6-III.   Division Three.   June 5, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. RODNEY
WAYNE MARCHAND, *Appellant.*

*Richard C. Fitterer*, for appellant.

*Paul A. Klasen, Jr., Prosecuting Attorney*, for respondent.

MUNSON, C.J.—Rodney Wayne Marchand appeals his convictions for unlawful possession of marijuana in excess of 40 grams and unlawful possession of cocaine. He contends: (1) the evidence of marijuana and cocaine should have been suppressed on the basis the initial stop of his vehicle constituted an unreasonable seizure; (2) the seizure of a marijuana cigarette from the ashtray of his automobile was the product of an unlawful search; and (3) the seizure of an additional quantity of marijuana from a suitcase in the vehicle trunk was also the result of an unreasonable search. We affirm the cocaine conviction, but reverse the marijuana conviction in light of *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983).[1]

On July 22, 1982, Troopers G. L. McNinch and D. C. Richmond of the Washington State Patrol, Ephrata detachment, conducted a roadblock on State Route 28, roughly a quarter of a mile from Highway 17, for the pur-

---

[1]Although Mr. Marchand assigns error to the trial court's findings on the CrR 3.6 issue, he has not provided us with his testimony at the suppression hearing and did not testify at trial. As a result, our independent review of the record is limited to the state trooper's testimony and whether the trial court findings are supported by the record of the suppression hearing. *See* RAP 9.2(b). *See also State v. Daugherty*, 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958, 67 L. Ed. 2d 382, 101 S. Ct. 1417 (1981); *State v. Poirier*, 34 Wn. App. 839, 841, 664 P.2d 7 (1983); *State v. Young*, 28 Wn. App. 412, 418, 624 P.2d 725 (1981). The trooper's testimony clearly supports the trial court findings. Hence, we accept the findings as supported by substantial evidence. *See State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

pose of checking vehicle registrations, drivers' licenses, and equipment. Trooper Richmond arrived at the location and established the roadblock by placing a single traffic cone on the divider area of the 4–lane roadway. Trooper McNinch was instructed to return to patrol headquarters before reaching the location, but joined the roadblock in process a short time later. A vehicle would be stopped, checked for violations, released, and the next oncoming vehicle would be stopped. During the inspection of any given vehicle, other traffic was permitted to pass uninterrupted.

While Trooper McNinch was checking another vehicle, Trooper Richmond stopped Mr. Marchand's vehicle. Trooper Richmond had just completed an inspection of a motorcycle. The motorcyclist had elected to remain at the roadblock, rather than receive a notice of violation, until such time as the trooper could verify the vehicle license and registration.

Mr. Marchand was advised of the purpose of the stop. Following Trooper Richmond's inspection of the vehicle, he walked to the passenger side of the car and crouched down to speak with Mr. Marchand through the open passenger window. While Trooper Richmond was advising Mr. Marchand of his failure to sign his vehicle registration and the fact his right front signal was not properly functioning, he observed an alligator clip attached to a small hand–rolled cigarette in the car ashtray.

Trooper Richmond then opened the car door and removed the alligator clip and the cigarette butt. He asked Mr. Marchand to step out of the vehicle and then searched him. Two baggies, one containing marijuana and the other cocaine, were retrieved from Mr. Marchand's boots. Following the discovery of this contraband, the trooper searched the interior and trunk of the vehicle. An unzipped suitcase found in the trunk was opened and an additional quantity of marijuana was discovered.

Mr. Marchand moved to suppress pursuant to CrR 3.5 and CrR 3.6. The State conceded the fact Mr. Marchand's statements to the trooper were subject to exclusion, but

argued the contraband was lawfully seized. The court concluded the roadblock was an acceptable seizure under *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); and the discovery of the marijuana cigarette in the ashtray provided probable cause to arrest Mr. Marchand. The court also held the search of the remainder of the vehicle was authorized under *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982). The State now agrees *State v. Ringer, supra,* decided while this case was on appeal, requires reversal of the conviction based upon the trunk search.

Mr. Marchand advances several grounds for suppression of the contraband. First, he contends the initial detention of his vehicle constituted an unreasonable seizure and the subsequently discovered evidence was tainted by its illegality. RCW 46.64.070 states in pertinent part:

> To carry out the purpose of RCW 46.64.060 and 46.64-.070, officers of the Washington state patrol are hereby empowered during daylight hours and while using plainly marked state patrol vehicles to require the driver of any motor vehicle being operated on any highway of this state to stop and display his or her driver's license and/or to submit the motor vehicle being driven by such person to an inspection and test to ascertain whether such vehicle complies with the minimum equipment requirements prescribed by chapter 46.37 RCW, as now or hereafter amended. No criminal citation shall be issued for a period of ten days after giving a warning ticket pointing out the defect.

The Washington State Patrol procedures further provide:

> For the purpose of this procedure, spot checks are defined as the stopping of motor vehicles by a highway roadblock for the purpose of inspecting vehicle licenses, driver's licenses, and vehicle equipment.
>
> Inspections will be in groups of vehicles without discrimination; however, in order to prevent unnecessary delay, no more vehicles should be stopped at any one time than can be effectively inspected by the available officers conducting the spot check. One officer may flag the vehicles over, inform the driver of the intention to inspect, and direct the operators to a waiting officer.

Officers shall hold spot checks during daylight hours only, using plainly marked patrol cars. The location selected shall provide an adequate and safe place for drivers to stop their cars off the roadway.

A Notice of Infraction will not be issued for defective equipment found at the scene of the spot check.

Motorists will be advised to repair their vehicles immediately, however, correction notices will allow ten days before reinspections are required. Vehicles with dangerous defects may be prevented from further operation, impounded, or directed to a place for repair in accordance with RCW 46.32.060.

We conclude Troopers Richmond and McNinch acted in conformity with RCW 46.64.070 and Washington State Patrol procedures. The purpose of the roadblock was to check for vehicle infractions. In terms of safety, the roadblock was conducted during daylight hours, using plainly marked patrol cars, by uniformed troopers, as well as a traffic cone to establish the roadblock. The location was a rural 4–lane highway, selected for its high visibility to oncoming travelers.

There is no evidence of the traffic count at the roadblock but it appears the vehicle inspection was conducted without discrimination. Although traffic remained uninterrupted while a particular vehicle was undergoing inspection, no vehicle was allowed to pass once an inspection was completed. In short, a single vehicle would be detained, checked for possible infractions as described in RCW 46.64.070, released, and the next oncoming vehicle would be stopped. The fact no more than one vehicle was stopped at any given time is of no consequence, since the guidelines specify no more vehicles should be stopped than can be effectively inspected by the available officers conducting the roadblock. Thus there was a minimum of inconvenience to the traveling public. The fact the motorcyclist, who had been stopped immediately prior to Mr. Marchand, had chosen to remain at the scene did not impact upon the neutrality of the roadblock procedure; the motorcycle inspection had been completed.

■ The next issue is whether the guidelines comport with the requirements that all seizures be reasonable. Mr. Marchand relies heavily upon *Delaware v. Prouse, supra.* He contends RCW 46.64.070 and the Washington State Patrol procedures for roadblocks provide law enforcement officers with unbridled discretion to stop and search vehicles. While RCW 46.64.070 may be susceptible to two interpretations, one of which would render it constitutionally infirm, we are required to adopt the interpretation which sustains its validity. *See Poolman v. Langdon,* 94 Wash. 448, 457, 162 P. 578 (1917); *State ex rel. Campbell v. Case,* 182 Wash. 334, 341, 47 P.2d 24 (1935); *Woodson v. State,* 95 Wn.2d 257, 261, 623 P.2d 683 (1980). We interpret RCW 46.64.070 as containing the element of reasonableness. In effect, vehicles may only be stopped when the procedure followed is neutral and indiscriminate.

■ The purpose of RCW 46.64.070 is to protect the health and safety of the public by assuring that only qualified drivers and vehicles which meet minimum equipment standards will operate on state highways. Washington has no annual vehicle inspection requirement.[2] *See* RCW 46.64.060. Whether a particular seizure is lawful depends upon a balancing of the public interest in law enforcement against the severity of the interference with individual liberty and privacy. *Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980). We conclude the brief detention of a vehicle without probable cause is permissible when based upon neutral criteria, as was employed here, as a valid exercise of the police power of the state in ensuring the health and safety of the public on the state highways. *See Delaware v. Prouse, supra* at 658–59.

While it is true the Supreme Court held in *Prouse* that absent at least an articulable and reasonable suspicion a motorist is unlicensed or the vehicle is not properly regis-

---

[2]RCW 46.32 provides for vehicle inspections but the Washington State Patrol has not implemented that chapter because of lack of legislative funding.

tered, or either the vehicle or an occupant is otherwise subject to seizure, stopping an automobile and detaining its driver are unreasonable; the Court also expressed the following caveat to this general rule:

> This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock–type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.

(Footnote omitted.) *Delaware v. Prouse, supra* at 663.

We believe the roadblock employed in this case did not run afoul of the rule in *Prouse*. While this was not a "100 percent" roadblock of the type referred to in *Prouse,* it is also not the selective, isolated vehicle stop denounced therein. The procedures followed involved a minimum intrusion to the traveling public and did not involve the type of police conduct proscribed in *Prouse.*

Mr. Marchand next contends Trooper Richmond's warrantless seizure of the marijuana cigarette from the vehicle ashtray was improper. In this respect, he claims the plain view doctrine was inapplicable under the facts. *State v. Lair,* 95 Wn.2d 706, 714, 630 P.2d 427 (1981) sets forth the three elements of the plain view exception to the search warrant requirement: (1) prior justification for police intrusion; (2) inadvertent discovery of incriminating evidence; and (3) immediate knowledge by police that they have evidence before them.

As we previously stated, the prior police intrusion was justified.[3] The discovery of the cigarette was also inadvertent; Trooper Richmond did not take any unreasonable

---

[3]Mr. Marchand makes much of the fact Trooper Richmond was at the passenger window when he discovered the marijuana cigarette. The trial court found the trooper was at the passenger side of the vehicle for safety reasons. We do not believe the trooper needed any additional justification.

steps to find the incriminating evidence from his vantage point outside the car. *See State v. Callahan,* 31 Wn. App. 710, 712–13, 644 P.2d 735 (1982); *State v. Henry,* 36 Wn. App. 530, 676 P.2d 521 (1984). Further, there can be no doubt the marijuana cigarette was immediately recognized as incriminating evidence in light of Trooper Richmond's previous experience. *State v. Lair, supra* at 716; *State v. Alexander,* 33 Wn. App. 271, 275, 653 P.2d 1367 (1982); *State v. Henry, supra* at 533. Although the record does not indicate whether the contents of the cigarette were immediately within view, there was probable cause to believe marijuana was contained therein. *See State v. Murray,* 8 Wn. App. 944, 949, 509 P.2d 1003 (1973), *aff'd,* 84 Wn.2d 527, 527 P.2d 1303 (1974), *cert. denied,* 421 U.S. 1004, 44 L. Ed. 2d 673, 95 S. Ct. 2407 (1975); *State v. Palmer,* 5 Wn. App. 405, 411, 487 P.2d 627 (1971). *See also State v. Ball,* __ N.H. __, 471 A.2d 347 (1983).[4]

---

[4]In *Ball* the New Hampshire Supreme Court held a warrantless seizure of a hand–rolled cigarette in an automobile ashtray could not be justified under the plain view rule, since the incriminating nature of the evidence was not immediately apparent prior to the seizure. In so holding, the court stated in 471 A.2d at 353–54:

> [W]e note that not all hand–rolled cigarettes contain contraband. Consequently, we cannot say that observation of a hand–rolled cigarette, by itself, would lead a reasonable and prudent person to believe that the cigarette contained an illegal substance. To transform mere suspicion about the contents of the hand–rolled cigarette into a reasonable belief based on probable cause, the officer must articulate additional corroborating facts. For instance, it might be shown that the arresting officer had the ability to distinguish hand–rolled marijuana and tobacco cigarettes by sight, or that he perceived the odor of marijuana, or that the defendant made a furtive gesture in an attempt to conceal the cigarette, or that the defendant's conduct was otherwise incriminating.
>
> The record before us provides no evidence of such corroborating circumstances. . . .
>
> The record fails to show that the troopers had special expertise in identifying cigarettes containing illicit substances. On the contrary, the record states that Trooper–trainee Hamilton was unable to identify the cigarette, by sight, and that Trooper Hunter could not tell the difference between a hand–rolled tobacco cigarette and any other hand–rolled cigarette. It appears that the sole justification for the troopers' belief that the cigarette contained marijuana was that it was hand–rolled and pinched at the end.

In contrast to *Ball,* the present record contains corroborating circumstances beyond the mere existence of a hand–rolled cigarette. First, an alligator clip was

■ Since the requirements of plain view were satisfied, the subsequent seizure of the marijuana cigarette was reasonable and not dependent upon the presence of exigent circumstances. *See Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Lair, supra* at 716; *State v. Johnson,* 17 Wn. App. 153, 159, 561 P.2d 701 (1977). *See also State v. Chrisman,* 100 Wn.2d 814, 676 P.2d 419 (1984).[5]

■ Finally, Mr. Marchand contends the search of his vehicle trunk was constitutionally infirm. He concedes *United States v. Ross, supra,* interpreting the fourth amendment to the United States Constitution, would permit such a search, but contends article 1, section 7 of the Washington State Constitution provides greater protection. We agree. In *State v. Ringer, supra,* the State Supreme Court declined to follow the rule enunciated in *Ross.* Under the State constitutional provision, a warrantless search incident to an arrest is limited to the person arrested and the area within his immediate control and may only be for purposes of removing weapons or preventing the destruction of evidence of the crime for which arrest is made. *State v. Ringer, supra* at 699. Moreover, probable cause, without more, will not justify a warrantless search of a vehicle. Exigent circumstances must also be shown. *State v. Ringer,*

---

attached to the cigarette butt. While a hand–rolled cigarette, by itself, may be an innocuous object, as suggested in *Ball,* the additional presence of the alligator clip (roach clip) created a reasonable inference that the cigarette contained marijuana, since the clip typically constitutes paraphernalia used in the consumption of marijuana. Second, the present record shows Trooper Richmond had special knowledge in identifying marijuana, unlike the state troopers in *Ball.* We are convinced the hand–rolled cigarette was immediately recognized as contraband, providing the necessary probable cause to justify its seizure.

[5]The facts in *Chrisman* presuppose the elements of plain view were not satisfied until the campus police officer crossed the threshold of the dormitory room. *See State v. Chrisman, supra* at 816, 819. Had the items been immediately identified as contraband before the officer entered the room, the subsequent seizure of the items might have been proper. The presence of exigent circumstances is only considered in determining whether the first element of plain view is satisfied. *State v. Chrisman, supra* at 819.

*supra* at 700–02.

Here the search of the vehicle, including the trunk and the suitcase, exceeded the limits permissible under *Ringer*. The search of the defendant outside the car, which included his boots wherein the marijuana and cocaine "baggies" were found, was valid. However, the quantity of marijuana found on Mr. Marchand was insufficient to support a felony conviction.

We therefore affirm the cocaine conviction as a valid search incident to an arrest, *see State v. Ringer, supra* at 699, but reverse the marijuana conviction.

GREEN and MCINTURFF, JJ., concur.

Review granted by Supreme Court January 4, 1985.